IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRANDON OTHA MARTIN,              )
                                  )
            Plaintiff,            )
                                  )
      v.                          )              1:25CV152
                                  )
AUTHOR SHEPARD, YATES,            )
DURHAM POLICE DEPARTMENT,  )
                                  )
            Defendants.           )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Brandon Othar Martin alleges that he was a pre-trial detainee at the Durham County Jail in early December 2023 when members of the Durham Police Department used excessive force when interrogating him. *See generally* Am. Compl., Docket Entry 4.

This matter is now before the Court on Martin's Motion for Summary Judgment. Docket Entry 24. For the reasons set forth below, the Court should deny Martin's motion.

## I.    FACTS

It is undisputed that Martin was in custody at the Durham County Jail in early December 2023. On December 4, he sustained two puncture wounds to his upper left arm for which he sought and received medical treatment. *See* Suppl. 1, Docket Entry 30. The Jail Chief who investigated

Martin's injury report concluded that he "could have only gotten [the puncture wounds] from an outside entity" because he "did not have such injuries upon being admitted into custody 2 weeks prior." *Id.*

Martin alleges that Yates is responsible for those injuries because Yates deployed his taser when he and an unknown officer interrogated Martin on December 4. Martin also alleges a similar incident on December 5 when Author Shepard, Yates, and an unknown Fire Marshal interrogated him and Shepard slapped him and grabbed his injured arm. Accordingly, he brought this suit pursuant to 42 U.S.C. § 1983 for excessive force, civil conspiracy, and supervisor liability. He also asserts North Carolina state law claims of common law negligence, negligent infliction of emotional distress, and

intentional infliction of emotional distress.[1]

Long before discovery closed, Martin moved for summary judgment and filed various documents, including briefs and supplements, in support of his motion. *See* Mot. for Summ. J., Docket Entry 24; Suppl., Docket Entries 30, 34, 35, 37; Br., Docket Entry 42; Reply Br., Docket Entry 31.[2]

## II. STANDARD OF REVIEW

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In analyzing a summary judgment motion, courts "must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Bandy v. City of Salem*, 59 F.4th 705, 709 (4th Cir. 2023).

The moving party bears the burden of establishing the absence of a genuine dispute of material fact by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which [he] believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Rule 56); *see also* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by[] citing to . . . materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials . . . ."). And, if a verified complaint is based on the plaintiff's personal knowledge, it can serve as the equivalent of an affidavit for purposes of summary judgment. *See Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021)

---

[1] Martin includes a claim for what looks like from his handwriting as "unintentional infliction of emotional distress." In addition to analyzing a claim for negligent infliction of emotional distress, the Court also analyzes a claim for intentional infliction of emotional distress in case Martin meant to assert such a claim. His other claims are illegible. *See* Am. Compl. § II.B.

[2] Although these documents were mailed and docketed over time, the Court interpreted the filings to be support for Martin's motion and considered them as such.

(citing *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)).

### III.   ANALYSIS

>  A. The Court should deny the motion as to the § 1983 claims.

Title 42, United States Code, Section 1983 "is a federal statutory remedy available to those deprived of rights secured to them by the Constitution and, in a more sharply limited way, the statutory laws of the United States" by persons acting under color of state law. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).   A plaintiff bringing suit pursuant to Section 1983 must show that a person acting under color of state law violated a Constitutional or other federal legal right. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, the Constitutional right at issue is the right to be free from an officer's use of excessive force, a right provided to a pre-trial detainee in the Due Process Clause of the Fourteenth Amendment.   *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015); *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). "'[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.'" *Id.* at 397-98 (quoting *Graham*, 490 U.S. at 395 n.10).

To succeed on a claim of excessive force as a pre-trial detainee, the plaintiff must show that "'the force purposely or knowingly used against

him was objectively unreasonable.'" *Simmons v. Whitaker*, 106 F.4th 379, 387 (4th Cir. 2024) (quoting *Kingsley*, 576 U.S. at 396-97).

"[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Kingsley*, 576 U.S. at 397 (quoting *Graham*, 490 U.S. at 396).   "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time . . . ." *Id.* (citing *Graham*, 490 U.S. at 396).

In so doing, the court "must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)).

As the *Kingsley* Court acknowledged, "[r]unning a prison is an inordinately difficult undertaking," where "safety and order . . . requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face." *Id.* at 399 (internal quotations omitted).   "Officers facing disturbances 'are often forced to make split-second judgments – in circumstances that are tense,

uncertain, and rapidly evolving.'" *Id.* (quoting *Graham*, 490 U.S. at 397).

Thus, "a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Id.* And, in so doing, a court must review the force used in "full context" to avoid "miss[ing] the forest for the trees." *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015).

The United States Supreme Court recently reiterated that "'the totality of circumstances' inquiry into a use of force has no time limit." *Barnes v. Felix*, 605 U.S. 73, 80 (2025). While "the situation at the precise time of the [use of force] will often be what matters most, . . . earlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones." *Id.*

To determine the reasonableness of an officer's actions, courts assess "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting," among other circumstances. *Kingsley*, 576 U.S. at 397 (citing *Graham*, 490 U.S. at 396).

To prove a civil conspiracy claim under § 1983, a plaintiff must show "'that the [defendants (1)] acted

jointly in concert and [(2)] that some overt act was done in furtherance of the conspiracy which [(3)] resulted in [the plaintiff's] deprivation of a constitutional right[.]'" *O.W. v. Carr*, 172 F.4th 337, 355 (4th Cir. 2026) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)) (alterations in *O.W.*). The evidence "'must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan.'" *Id.* (quoting *Hinkle*, 81 F.3d at 421). "'This is a weighty burden.'" *Id.* (quoting *Hinkle*, 81 F.3d at 421).

Here, as the party moving for summary judgment on his § 1983 claims, Martin bears the burden of establishing the absence of a genuine dispute of material fact. And he cannot do so by relying on statements in a brief to support a motion for summary judgment, because they are not evidence. *See Hill v. Carvana, LLC*, No. 22-CV-37, 2022 WL 1625020, at *3 (M.D.N.C. May 23, 2022) (citing cases); *City of Greensboro v. Guilford Cnty. Bd. of Elections*, No. 15-CV-559, 2017 WL 11488724, at *1 n.4 (M.D.N.C. Jan. 26, 2017) (collecting cases). Likewise, he cannot rest upon his unverified complaint. Martin must identify portions of the pleadings, discovery responses, deposition testimony, and affidavits (if any) that support his position. He failed to do so.

Specifically, very few of Martin's submissions constitute evidence properly before the Court on a

summary judgment motion. And none of that evidence shows, as a matter of law, that the defendants violated Martin's constitutional rights.

Accordingly, when the defendants responded to Martin's motion, they argued that the "motion is not supported with any competent evidence." *See* Defs.' Resp. in Opp'n to Pl.'s Summ. J. Mot. ¶ 1, Docket Entry 29; *see also id.* ¶ 4 (noting there is no evidence in the record).

Martin replied and filed several supplements. His reply brief presents the same allegations as those in his complaint. *See* Mem. of Law, Docket Entry 31. The various supplements include a December 4, 2023 injury report, two health services reports, two letters from Martin to Internal Affairs, statements other detainees wrote, and additional arguments. *See* Docket Entries 30, 34, 35, 37, & 43. The court should "generally should not consider 'new evidence' presented by a summary judgment movant in its reply brief to which the non-movant has had no opportunity to respond. But evidence attached to a reply brief is not 'new' if it responds to issues and facts raised in the non-movant[']s opposition brief." *Kurland v. ACE Am. Ins. Co.*, No. CV JKB-15-2668, 2017 WL 354254, at *4 (D. Md. Jan. 23, 2017) (internal citations omitted).

Here, the defendants do not argue that the Court cannot consider the supplemental materials, and they do track the allegations in the complaint.

Most importantly, they do not change the analysis.

The undisputed evidence from these materials shows that Martin suffered injuries to his arm from a taser on December 4, 2023, sought and received treatment at health services, and reported the alleged incident to health services and Internal Affairs. In the Detainee Injury Report, the investigating officer reported Martin's two puncture wounds from a taser in his upper left arm and concluded that he "could have only gotten them from an outside entity" (an entity other than the Sherrif's Office) because he "did not have such injuries upon being admitted into custody 2 weeks prior."

But there is no record evidence of the circumstances according to *how* Martin received his injuries. In other words, there is no evidence before the Court of what actions, if any, Shepard or Yates took relative to this injury, and there is no evidence of the alleged December 5 incident. This lack of evidence is determinative to all of Martin's claims. The only detainee statement that was made under penalty of perjury, *see Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 352-53 (D. Md. 2011) (recognizing that a statement made under penalty of perjury, even if unsworn, substantially complies with 28 U.S.C. § 1746 and citing cases stating the same), provides no evidence of the December 4 or 5 incidents and, instead, describes

general observations of police officers at the jail.

Not only does Martin fail to provide competent evidence in support of his excessive force claim, but there is accordingly no evidence of a *conspiracy* to violate his constitutional rights.

Martin also alleges supervisory liability pursuant to § 1983. It is unclear if he brings this claim against Shepard, Yates, or the Durham Police Department, or a combination of these defendants. To the extent Martin contends Durham Police Department is the liable supervisor, it lacks the capacity to be sued. *See Cates v. Sandoval*, No. 1:20cv20, 2020 WL 5665537, at *7 (M.D.N.C. Sept. 23, 2020) (dismissing the claims against the Durham Police Department because, under North Carolina law, it lacks the capacity to be sued) (citing cases).

There is no supervisory liability under § 1983 because liability stems from an intentional act. A supervisor can only be liable under § 1983 for "their *personal* wrongdoing or supervisory actions that violated constitutional norms." *Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (emphasis added). The supervisor's "'indifference or tacit authorization'" of "a constitutional violation committed by a subordinate state or local government official" must be "'a causative factor' in enabling the violation." *Bolick v. Anderson*, 169 F.4th 528, 541 (4th Cir.

2026) (quoting *Shaw v. Stroud*, 13 F.3d 791, 798-99 (4th Cir. 1994)). To determine if a supervisor is liable, courts "must consider whether the supervisor's own 'deliberate indifference permitted the constitutional abuses to continue unchecked.'" *Id.* (quoting *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)).

To prove a supervisor's liability under § 1983, a plaintiff must show

> (1)　that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;
>
> (2)　that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and
>
> (3)　that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw*, 13 F.3d at 799 (internal quotations omitted).

Here, this claim fails at the start because, as explained above, there is no evidence from which to conclude,

6

as a matter of law, that anyone violated Martin's constitutional rights such that a supervisor could have been deliberately indifferent to the violation.

In sum, Martin has not shown, as a matter of law, that Shepard, Yates, or the Durham Police Department violated his constitutional rights.

Therefore, the Court should deny Martin's motion for summary judgment as to his § 1983 claims.

> ### B. The Court should deny the motion as to the state claims.

A plaintiff alleging common law negligence under North Carolina law "'must establish that the defendant owed the plaintiff a duty, that the defendant breached that duty, and that the plaintiff's injury was proximately caused by the breach.'" *City of High Point v. Suez Treatment Sols., Inc.*, 485 F. Supp. 3d 608, 620 (M.D.N.C. 2020) (quoting *Martishius v. Carolco Studios, Inc.*, 562 s.E.2d 887, 892 (N.C. 2002)). "Intentional acts cannot form the basis for a negligence claim." *McClean v. Duke Univ.*, 376 F. Supp. 3d 585, 617 (M.D.N.C. 2019) (citing *Brewer v. Harris*, 182 S.E.2d 345, 350 (N.C. 1971); *Givens v. Sellars*, 159 S.E.2d 530, 535 (N.C. Ct. App. 1968)).

Here, as an initial matter, Martin alleges that Shepard and Yates acted intentionally on December 4 and 5. Furthermore, assuming *arguendo* for purposes of this motion that Yates or

Shepard or both owed Martin a legal duty, there is no evidence, as explained above, from which the Court could conclude as a matter of law that either of them caused Martin's alleged injuries.

Therefore, the Court should deny Martin's motion for summary judgment on his common law negligence claim.

A claim of negligent infliction of emotional distress under North Carolina law requires evidence that "the defendant negligently engaged in conduct, it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress[,] . . . and the conduct did in fact cause the plaintiff severe emotional distress." *McClean*, 376 F. Supp. 3d at 616 (cleaned up). Evidence of "severe emotional distress" includes a "severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so" such as "neurosis, psychosis, chronic depression, [and] phobia." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 395 S.E.2d 85, 97 (N.C. 1990) As with common law negligence, intentional conduct cannot support this claim. *See McClean*, 376 F. Supp. 3d at 616.

For the same reasons that Martin's motion fails as to his common law negligence claim, so, too, does the motion fail on the negligent infliction of emotional distress claim. In addition, there is no evidence to

7

determine as a matter of law that Martin suffered severe emotional distress because of any negligent conduct.

Thus, the Court should deny Martin's motion for summary judgment on his negligent infliction of emotional distress claim.

Finally, to prove intentional infliction of emotional distress under North Carolina law, a plaintiff must show "extreme and outrageous conduct by the defendant which is intended to and does in fact cause severe emotional distress." *Id.* at 611 (cleaned up). "Extreme and outrageous conduct" is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Briggs v. Rosenthal*, 327 S.E.2d 308, 311 (N.C. Ct. App. 1985) (quoting Restatement § 46, cmt d). "Severe

emotional distress" has the same meaning as it does in a negligent infliction of emotional distress claim. *See McClean*, 376 F. Supp. 3d at 611.

As with Martin's other claims, the evidence before the Court does not permit a determination as a matter of law that Shepard's or Yates's conduct was extreme and outrageous. There is also no evidence to conclude as a matter of law that Martin suffered severe emotional distress because of any such conduct.

Therefore, the Court should deny his motion for summary judgment on the intentional infliction of emotional distress claim.

IV.   CONCLUSION

**IT IS HEREBY RECOMMENDED** that the Court **DENY** Brandon Otha Martin's Motion for Summary Judgment.

JoAnna Gibson McFadden
United States Magistrate Judge

Date: July 13, 2026

8